The first case is in re Bernard L. Madoff and arguing first is Jabba Associates, I believe. Thank you. Your Honor, may I take my mask off? Yes. Thank you. May it please the court, my name is Lance Gotthoffer. I'm attorney for Jabba Associates. This appeal raises two issues that have not previously been before the court arising out of the Madoff fraud. From 1996 until Madoff confessed, Jabba was a good faith customer of the investment advisory business of Bernard L. Madoff Investment Securities, a sole proprietorship. Jabba withdrew more than it paid into Madoff and that's what gives rise to the instant lawsuit. In 2001, Madoff established a company, Bernard L. Madoff Investment Securities, LLC. Now that is not the entity that Jabba contracted with, paid money to, or received withdrawals from. That was the sole proprietorship, a different entity. Did they have a written contract with the proprietorship? It did, Your Honor. Okay, go ahead. The plaintiff here, Eric Picard, is the SIPA trustee for the LLC. He is not the trustee for Madoff individually or the sole proprietorship. Rather, pursuant to a consent order that Mr. Picard entered into, Alan Nisselson is the Chapter 7 trustee for Madoff individually and the sole proprietorship. So you have two different entities and two different trustees. But aren't they working together? Didn't they do many things jointly? They have worked together, yes. Nonetheless, it is Mr. Picard that is suing to recover the excess withdrawals, even though he is only the SIPA trustee for the LLC. But you don't doubt that Bernard Madoff was subject to SIPA, right? I do not doubt that at all. But he had two separate businesses, one the LLC, one the sole proprietorship. But the thing is, he commingled all the funds. I'm sorry, I did not hear you, Your Honor. He commingled all the funds from all the businesses. Yes, Your Honor, but he ran his investment advisory business through the sole proprietorship. So why would we make a decision based on separate businesses when he threw all the money into one pot? Because the SIPA debtor is the LLC and only the LLC. And as the court explains in Avellino, the SIPA trustee cannot go after property of the sole proprietorship. Well, Avellino doesn't bind us. Of course not. The letter of Avellino is correctly cited. Mr. Madoff's investment advisory group had five employees who paid their wages. I'm sorry, who did their wages? Mr. Madoff's investment advisory group had five employees identified, several of whom went to jail. How many, who paid their wages? I believe it was the sole proprietorship or Mr. Madoff personally. Do you have a record reference to that? I do not have a record reference. Was that before the district court? I do not believe so. Okay. There were occasions where the investment advisory account monies went and funded, were used by the proprietary trading funds for cash. That's referenced in the expert's report. Doesn't that show a co-mingling and a movement between the two, some kind of collusion or some kind of cooperation and not an appreciation of the separateness that you're putting forth? The JPMorgan Chase accounts from which the money came were owned by Mr. Madoff. I understand that. Is that really clear? After 2001, the name on the JPMorgan accounts changed from Bernie Madoff to Bernie Bernard L. Madoff Investment Securities. I understand you're saying that that's the trade name of the sole proprietorship. It could also be the trade name of the LLC, right? Well, when the LLC was being referred to, it was referred to as the LLC. Madoff had used the name of the sole proprietorship since the 1970s and continued to use it on the JPMorgan accounts. But I think the critical thing is that there is not a scrap of paper showing that the JPMorgan accounts were ever transferred to the LLC. Is that crucial? Is that, for you, that's where you stake your claim upon the ownership? Is that it? Yes. If, what if there's, what if there's, what if there's evidence that shows that in actuality, the LLC was doing business or representing itself to also cover the investment advisory accounts? If the LLC was holding itself out to cover the, I'm sorry, could you repeat the question, Your Honor? I think I missed it. Holding itself out to include investment advisory activity. It would depend on the customer. The LLC could enter into an agreement with a customer to be a customer of the LLC and do investment advisory work. But as far as one can tell, the LLC never had any investment advisory customers. What about the re-registration in 2006? That was not argued below, or at least the form ADV that supports it was not argued below. But there was a re-registration in 2006, but Madoff said he had no investment advisory customers. And we know that not to be true. Well, it depends. If you mean the LLC- Don't we have customer agreements after 2001 that are with the LLC? I'm sorry, Your Honor? Don't we have customer agreements after 2001 with customers of the LLC? Yes. But Mr. Madoff- The LLC did have customers, so we know that it did, right? The LLC did have customers, but Madoff reported to the SEC that it did not. So- Well, that doesn't make it so. But as you say, Madoff sometimes lied to the SEC, right? I think he lied very frequently. Right. So if we have actual customer agreements between the LLC and customers, isn't that more probative than what he said to the SEC? I think, Your Honor, the probative question comes back to whether the assets of the sole proprietorship were transferred to the LLC, including the bank accounts. If the bank accounts were owned by- What would it have to do? So the sole proprietorship is just Bernie Madoff, and the LLC is an LLC with Bernie Madoff as the sole owner, right? Yes. So isn't it just sort of a matter of how he thought he was doing business, whether it was as the LLC or as the sole proprietorship, and the way he treated the account? What piece of evidence do you look for to show conclusively that the bank account had been transferred? As I say, I think the most crucial piece of evidence is that all payments came from the J.P. Morgan accounts. Payments from the transferred accounts, the market-making business, excuse me, the self-trading, came from Bank of New York. Madoff used the J.P. Morgan accounts for the investment advisory business. And we know that some customers of the investment advisory business had contracts with the LLC, right? There are some contracts on LLC letterhead, yes. So then is your position that he was running two investment advisory businesses, one through the sole proprietorship and one through the LLC? Yes. So there were two. Do you have the battery in this text? I'm sorry, go ahead. So there were two businesses. He was running the sole proprietorship, was running the customers, at least that came before 2001. Did he file K-1s for the sole proprietorship? K-1s, I don't believe so. I think it was 1099s. Was he reporting the income from the sole proprietorship? I'm sorry, Your Honor? Was he reporting the income from the sole proprietorship? Yes. After 2001? I believe so, Your Honor. Your customer agreement from 1996 says that the agreement will inure to the benefit of the sole proprietorship and any successor organization, right? Correct. So if, in fact, the LLC did succeed to the sole proprietorship, your customer agreement was you would have a contract with the LLC. The customer might have an argument that it has a contract with the LLC, although I would point out that if the sole proprietorship continued to run the investment advisory business, then the LLC was not the successor to that business. But even if the customer contracts could be transferred, and these were personal, I'm sorry, may I continue? Just finish the sentence, yes. I'm sorry? Just finish that sentence. Yes. But even if the sole proprietorship contracts were transferred, and that would be problematic because they were personal services contracts, which normally cannot be transferred without the consent of the counterparty, it would not transfer the bank accounts, and the bank accounts are the property that is at issue, or money from the bank accounts is the property at issue in this case. You have retained three minutes for rebuttal. Thank you, Your Honor. Thank you. We'll hear from SIPA next. I'm sorry, say it again. Okay. Go to the mic because it's very hard to hear you. May I remove my mask? Yes, you can. That probably didn't help. So we're hearing from the trustee first? Yes, Your Honor. Before SIPA. Get right between both the mics. That helps. Thank you. Right there? Yep. Great. Good morning. May it please the Court. My name is Amy VanderWaal, and I'm counsel for Irving Picard, the trustee in this SIPA liquidation. I would just like to begin by saying that at this point in the liquidation, it is very well settled that cases like those brought against the appellants are strict liability cases. The fictitious profits that they received must be returned to the estate to distribute amongst customers who have not yet received their principal. Appellants are resisting this reality and are grasping at straws. The argument they make about there being two investment advisory businesses or the investment advisory business not being a part of the LLC has been rejected at least eight times. Except I'm reading from RAR where the district judge there says, Drawing all inferences in favor of RAR, the court cannot say that no reasonable fact finder could conclude that either Madoff himself or the sole proprietorship retained ownership over the 703 and 509 accounts even after the LLC's formation in 2001. So that's the outlier case, correct? Yes, Your Honor. We would submit that is an outlier, and we would submit that subsequent to that decision, both Judge Kodal twice and Judge McMahon, considering RAR, went a different direction. And they found that there was simply no genuine issue of material fact on the basis of the record before them. In fact, Judge McMahon stated that the trustee continues to present evidence overwhelmingly demonstrating that his position is factually true while the appellants have failed to controvert the record before her, except with wishes and hopes. So why don't you tell us... Does your argument depend on the... Excuse me. So sorry. Why don't you tell us what the uncontroverted facts are that moved Judge McMahon and Judge Kodal to those conclusions? Yes, Your Honor. I'll begin with the testimony of the trustee's two experts, both who are forensic accountants and testified about... Mr. Dubinsky testified about the three business units forming the LLC, the investment advisory business, the prop trading business, and the market making business. All were contained within the LLC. He talks about the initial registration in 1960 with the sole proprietorship with the SEC. He talks about the change in corporate form in 2001 as reflected in the amended form BD filed with the SEC. The amended form BD provides that all of the assets of the sole proprietorship are transferred to the LLC. Nothing's left. The sole proprietorship ceases to exist. It has no assets. It no longer functions. Um, there's also the form ADV, which is contained in Mr. Dubinsky's report as well. So I'm listening to... You said there's no one, nothing left in the sole proprietorship after the transfer to the LLC? Nothing was left? Indeed, it had no assets remaining, Your Honor. But what about the 703 and 509 accounts? Those accounts were transferred as part of the transfer in 2001. Those accounts were transferred to the LLC. Suggests they weren't. Is he just wrong? Well, the name on the bank account changed as Ms. Koura, another one of the trustee's experts testified. The name changed from Bernard Almeidoff to Bernard Almeidoff Investment Securities. But did he notify JPMorgan of this change? We didn't find a record in the files from JPMorgan. We did find records where they notified other entities of the change. You know, some of the regulatory agencies, they notified of this change. We did not find a letter to JPMorgan, but we would submit that the bank accounts were the sort of instruments of the fraud. This was where all the customer money went in, all the customer money went out. This was customer property. So regardless of who owned the bank accounts, that money can be recovered by the trustee. The SIPA authorizes you to recover customer property only if it is recoverable under the bankruptcy code, right? And the bankruptcy code talks about the... The bankruptcy code says that it needs to be an interest of the debtor that's transferred, right? I'm sorry, I missed the last bit of that. So SIPA doesn't just say you can recover customer property, period. It says you can recover customer property if and to the extent it is recoverable under the bankruptcy code. And one of the requirements of recovering a fraudulent transfer is that it's a transfer of the interest of the debtor, right? Well, I would agree with you. It has to be a transfer by the debtor. Because customer property is never property of the debtor, SIPA creates a fiction that allows the trustee to recover customer property. Oh, the... Oh, I see, right. But the definition of customer property is that but for the transfer, it would be customer property, but it would be held by the debtor for the customers, right? The debtor has possession, but the ownership remains with the customer. If it were true that there were a separate business besides the LLC that was holding all of these monies on behalf of other customers and dealing with them, and it was a separate business from the LLC, it would not be... It'd be a different debtor, right? You wouldn't argue that if there was a completely separate business, let's say Bernie Madoff had one with other partners and they held a separate account and you're not liquidating that company, you wouldn't say you would have the authority to recover transfers from that account, right? I think there's a distinction between who holds the account and who transferred the customer property. Appellants are saying that the most important fact here is that the bank accounts were not owned by the LLC. We disagree. If those bank accounts contained customer property and that customer property was transferred to appellants that is recoverable by the trustee... So it was customer property no matter what name was on the account. That's correct, yeah. As long as they're customers of the LLC, that's really where the rubber meets the road here. It's not really so much whose name is on the bank account, it's who they were dealing with. Java attempts to claim that because they were in Madoff's name, they were still dealing with Bernie Madoff individually. And your point is that because of the registration statement, because of the expert statement, they were dealing with the LLC. Madoff may have been added in his own name, but it'd be no different than if I'm a registered broker dealer, you're my client, you hand me $100,000 and then I take that money and I immediately put it in my own account. That doesn't insulate it from the trustee's reach. Is that your view? So the question is not so much ownership of the account, but whether you can extrapolate from ownership of the account that they dealt solely with Bernie Madoff individually. I think that's... If they were Madoff's individual clients, Madoff's not the debtor for SIPC's purposes. If the sole proprietorship continued to exist, yes, I would agree with you. Great, thank you very much. So your argument is that the LLC was essentially using this account, even if it was under Bernie Madoff's name. Our position is the account was owned by the LLC. The account was one of the all assets that was transferred from the sole proprietorship to the LLC in 2001. I'm simply saying that even if that's not... Even if it wasn't, the LLC was using it to transact its own business and that makes it customer property. But that means the ownership of the account doesn't matter. But if JABA were right, that actually it's not the LLC using it. It's the sole proprietorship that's running the investment advisory business. That would still mean that it's not being held by the debtor. So you're saying the ownership doesn't matter. But they're saying the ownership is evidence that shows the LLC wasn't the one doing the transfer, right? You still have to refute that argument. The LLC does have to make the transfers and we submit that it does. And one piece of evidence that you can look at is the customer statements themselves. The customer statements that this court has found... There's a lot about the Form BD. Can I just ask, does the case really depend on the admissibility of the Form BD? The Form BD is not the instrument by which assets are transferred. It's just one statement by Madoff that he did this transfer, right? And so wouldn't we look to other pieces of evidence to determine whether the transfer was actually effectuated? We think it's one piece of evidence. If you look at the complete context, I think it's quite clear that the transfer was effectuated here. And, you know, I would look to the testimony of Bruce Dubin's scheme. It's clear that the entire record that was before Judge Kodal that clearly leads to the conclusion that every asset of the sole proprietorship ended up with the LLC. Thank you. We'll hear from SIPA. Thank you. May I remove my mask? Yes, you may. Good morning and may it please the court. Nathaniel Kelly for the Securities Investor Protection Corporation. The reason the trustee's position and the decision below makes sense is because doing otherwise would, as this court said in its net equity decision in this case, give legal effect to Madoff's machinations. Here's a situation the court, the defendants want this court to bless. That a SIPA member can secretly spin off its customers to an unregistered broker-dealer with the facade of a SIPA member still receiving bank accounts from the SIPA, account statements from the SIPA member, but they would no longer be protected by SIPA and they would no longer receive fraudulent, and when they receive fraudulent transfers of customer property, the SIPA trustee could not recover it. The protections of our carefully regulated securities industry are not so easily manipulated. This was all one fraud conducted as the business of a SIPA member broker term, now subject to liquidation and protection under SIPA. Counsel, I don't want to be argumentative, but when you say carefully regulated, he did this for years. There are certainly, there are certainly things missed, Your Honor, but the regulations, the, in the context is that SIPA provides a backstop for these. When a firm registers as files a form... I understand SIPA's role, but the regulation in this case was failed. It failed, didn't it? I mean, he did this for years, Mr. Madoff. Yes, Your Honor, the... All right, go on. I just wanted to make clear that I was unimpressed with the regulatory scheme that you are telling us about. Their investigators certainly could have probably done a better job, Your Honor, but the protections provided through our securities regulations are the key here. The assets and the appellants deposited with BLMIS are customer property and recoverable by the trustee, and here's why. Since the enactment of SIPA in 1970, BLMIS has been a continuous member of SIPIC, first as a sole proprietorship and then as an LLC. Funds entrusted to BLMIS... And that's because the registration number stayed the same? Yes, Your Honor, the same SEC registration number, 8-8132. So it doesn't make a difference what he checked on the BD form? What's that? Does it make a difference what he checked on the BD form? He did not check... Speaking of the investment advisor box on the form, amended form BD, he did not have a registered investment advisor at that in 2001. Checking that box would have been akin to admitting that he was running an unregistered business. So he had no reason to check that box. So you think it was intentional on his part, not an oversight? Whether it was intentional or oversight, I think you could... One of the keys is then when he did register his investment advisor business in 2006,  Let me ask you a question. Where in the record do we find an assertion that he was not doing business as an investment advisor in 2001? And therefore, that explains why he didn't check the box. Because he wasn't registered as an... I mean, he was not registered as an investment advisor until 2006. Okay, but is there something in the record that reflects that? Yes, in Mr. Dubinsky's expert report, he talks about, I believe it is on page and appendix A170. He mentions that... A170? I believe so. Okay, thank you. Continue, thank you. Continue. So the funds entrusted to BMIS by customers such as the defendants for investment in the securities markets were deposited and commingled in the JPMorgan accounts. The title remained... Before you get far past the Form BD, does the case depend on the Form BD? So even if Judge Harmon were right that there are questions about its admissibility, you pointed to all this other evidence that suggests that he was running the IA business out of the LLC. Would that be enough? Yes, Your Honor, I believe it would. I think the other evidence is strong enough to demonstrate that these transfers came from the LLC. But the Form BD, I think, provides the legal framework for the CIVIC protection. The legal effect of filing a Form BD is that a brokerage firm becomes a member of CIVIC and its customers are protected by CIVIC. The legal effect of Madoff filing the amended Form BD was that the successor entity, the LLC, is now the member of CIVIC, the same member of CIVIC. And all of its customers are now protected by CIVIC. If Madoff had transferred everything to the LLC but had not filed an amended Form BD indicating that, does that mean the LLC would not have become a member of CIVIC? I'm saying if in reality the LLC did succeed to the sole proprietorship, but he never filed the form indicating that, would you be able to liquidate the assets? Well, yes, Your Honor, I believe it would because it'd still be customer property at that point. It's still all operated under... Because it's property that's been used by the LLC. I mean, I thought that the whole argument is that this was all being used by the LLC. Well, the... May I finish? Finish the answer, yes. There's a case law, I believe it's the old Naples case, which is pretty clear that property entrusted for investment in the securities through a CIVIC member for investment in the securities markets, even if directed to an unregistered related entity, is still protected by CIVIC. Thank you. Thank you. Mr. Gotthoffer, you've reserved three minutes for rebuttal. Thank you, Your Honor. I must advise the court that earlier this month, there was a trial in the RAR case. What happened with that? I meant to ask. I meant to tell you, and we both spoke of other things. The jury returned a verdict for the plaintiff. They answered a special interrogatory that all of the business of the sole proprietorship was transferred to the LLC. But they were not allowed to answer a question of, did the bank accounts go to the LLC? The bank accounts, for my money, aren't determined here. The question is whether they were or were not customers of the LLC. If the LLC is the broker-dealer, and you're investing with the LLC, and then the LLC simply takes the money and puts it into the individual's account, that's customer property and traceable. The fact that it's Bernie Madoff's account doesn't protect that money. The question is whether they are or are not a customer of Bernie Madoff individually, or whether they are a customer of Bernard L. Madoff Investment Securities LLC. Is that not the question? That is the question. They're very good. Thank you. So what was the outcome? They found that the accounts were not part of the LLC? No, they did not reach that question, the way the verdict form was set up. If they found that the investment advisory business of the assets of the sole proprietorship were transferred to the LLC, they did not answer the question regarding the bank accounts. So did RAR recover any money after that jury? No, this was a plaintiff's verdict, and RAR was the defendant. I'm sorry. Isn't the bank account one of those assets that would be transferred? You can't. Well, let me answer in two ways, if I may, Your Honor. First, and I think Judge Pooler pointed this out, the Form BD, which has been given a lot of attention, isn't a transfer document. There's no document in the record that I know of that transfers, actually legally, efficaciously transfers the assets of the sole proprietorship to the LLC. That's number one. Number two, you can't transfer a bank account except by an agreement between the bank and the customer. There'd be no way the bank, for example, could abide by know-your-customer rules if a customer could transfer the account without even telling the bank. And so I think I understand your argument about the ownership of the bank account. I'm just saying in terms of the interpretation of the jury's verdict, if the jury found that the assets were transferred, wouldn't that include the bank account? Let me take a look at the verdict form and read exactly what they said, if I may. We'd be better off if you wrote a letter to us, it would seem, so that your opponent can have an opportunity to respond. I mean, at this last moment in rebuttal, for you to bring up a verdict in Judge Furman and then to extrapolate what it means to us is a little bit late, because it was late. But I think that I'll ask the chair to entertain the fact of a 28-J letter to that effect, so we can think about it. That would be wonderful if you would do it within five business days, and SIPA and Irving Pecora can respond three days after that. Thank you. Thank you very much. Thank you, Your Honors. Thank you all. Very good argument.